## ETHEL BATTLES v. STATE.

No. A-6937. Opinion Filed Nov. 23, 1929.
(282 Pac. 689.)

W. A. Bishop and Japp, Woodliff & Garrison, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, P. J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Seminole county of manslaughter in the first degree, and her punishment fixed at confinement in the state penitentiary for a term of four years.

At the time charged, defendant, in the town of Seminole, shot and killed her husband, Charley Battles. The parties were negroes, and at the time defendant was living separate and apart from her husband, several blocks

from the former home in which he lived. Shortly before the killing, defendant and deceased met on the railroad tracks; deceased attempted to talk with defendant, but she refused to talk with him, and he then struck and knocked her down. Defendant soon after procured a pistol, and with two small nephews went to the home of deceased, broke down the door, and shot him four times; three of the shots taking effect, from which deceased died almost immediately. One or two witnesses for the state testified that defendant passed in front of their place of residence, just across the street from where the killing occurred, accompanied by two small nephews, who were imploring her not to kill "Uncle Charley." She stated to these witnesses that she was going to the house to kill him. One of the witnesses testified he saw something in her hand just before she crossed the street. Defendant in her own behalf testified that she killed her husband in self-defense; that after he knocked her down on the railroad track she started toward home, and deceased waylaid her in the pipe yard near their house and knocked her down again, and compelled her to go home with him, and after they got into the house he threatened to kill her, and made a rush for the dresser drawer, in which she knew the pistol was kept, and that she beat him to the pistol, and he followed her up, and that she shot him. There is some evidence that she was intoxicated at the time of the homicide.

The first contention is that the court erred in giving instruction No. 5, as follows:

"You are instructed that the defendant, in addition to her plea of not guilty, pleads what is known in law as self-defense; that is, the defendant claims that she took the life of the deceased, Charley Battles, in order to save her own life or to prevent great bodily harm being inflicted

upon her; and in this connection you are instructed that a person has a right to fight in his own necessary self-defense, and to use whatever force is necessary or apparently necessary to prevent losing his own life or having great bodily harm inflicted upon him, and it is not only the real, but the apparent, danger that authorizes one to act in his own defense, and in this case, if you find and believe from the evidence that the deceased, Charley Battles, assaulted or was about to assault the defendant, and that the defendant was without fault in the premises, the defendant had the right to defend herself and to use whatever force was necessary, or apparently necessary, to keep from losing her own life or having great bodily injury inflicted upon her, and in this connection you are instructed that it is your duty as far as may be possible to place yourself in the position of the defendant at the time of the fatal difficulty, and to view the transaction from her standpoint, and if you have a reasonable doubt as to whether the deceased or the defendant was the aggressor in the fatal difficulty, and as to whether the defendant believed, at the time she took the life of the deceased, that she was in danger of losing her life or having great bodily injury inflicted upon her, then you should resolve that doubt in favor of the defendant and find her not guilty.

"You are further instructed, however, that where a person is assaulted, or about to be assaulted, that it is his duty to use all reasonable means within his power to avoid the difficulty and avert the necessity of killing his antagonist, except that he is not bound to retreat, provided he is in a place where he has the right to be."

It is argued that the part of the instruction which requires that the person assaulted shall be without fault is too general and is calculated to mislead the jury; that the words "without fault" should have been defined to the jury, which should have been told the character of acts on the part of defendant which destroys or deprives her of her right of self-defense, citing Gibbons v. Territory, 5 Okla. Cr. 212, 115 Pac. 130. No additional or fur-

ther request for instruction upon this point was made, nor to further define the term "without fault." The law is often stated in similar language to that used in this instruction. Thus it was said in Evans v. State, 8 Okla. Cr. 78, 126 Pac. 586:

"One who kills another under an apprehension of death or great bodily harm from assault must have been free from fault in bringing on the difficulty in order to justify the homicide."

A similar expression is used in Reed v. State, 2 Okla. Cr. 589, 103 Pac. 1042, syllabus 8. If defendant desired a further definition, she should have submitted a request to the court. Merriott v. State, 18 Okla. Cr. 247, 194 Pac. 263.

Complaint is also made of the proviso in the last clause of the foregoing instruction, that defendant, to avail herself of the right of self-defense, should be in a place where she had a right to be. It is argued that, the homicide having taken place at the home, the jury should have been told that defendant was at a place where she had a right to be. As it is undisputed that defendant and the deceased were living separate and apart, and she was not living at their former home, and in view of the difficulty which had just taken place between them, and her evident purpose in going to their former home was for revenge, it would have been improper for the trial court to assume that she had a right to be there, and the instruction is not erroneous in this particular.

Several other matters are presented in the brief, all of which have had the attention of the court, but none are of sufficient importance to call for special discussion. It appears to us that there can be no question but that defendant is conclusively shown to be guilty of manslaught-

er in the first degree, and, since the punishment fixed is the minimum, none of the errors complained of could have been prejudicial.

The case is affirmed.

DAVENPORT and CHAPPELL, JJ., concur.